**James Delevan PUDERBAUGH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–99–328 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 9, 2000.

Delivered Nov. 8, 2000.

Walter E. Herman, III, Humble Law Center, Humble, for appellant.

Michael R. Little, Dist. Atty., Steve Greene, Asst. Dist. Atty., Liberty, for State.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

James Delevan Puderbaugh was indicted for having committed the first degree felony offense of aggravated sexual assault of a child younger than fourteen years of age. After the jury found Puderbaugh to be guilty, the court assessed punishment at seventy-five years of confinement in the Texas Department of Criminal Justice, Institutional Division. Puderbaugh raises five points of error in his appeal.

Point of error one urges, "The trial court erred by allowing a social worker to testify to statements made to him which incriminated appellant because the State did not show that the complainant knew the statements were being made for the purpose of medical diagnosis or treatment." Richard Brouwer, a clinical social worker who practices with physicians in a family office practice, testified that the complainant C.P., was referred to him for counseling by C.P.'s family physician. Since starting treatment in June 1997, Brouwer had over 30 sessions with C.P., conducted approximately twice a month. In the course of her treatment, C.P. indicated that her father, the appellant, sexually abused her.

▮ Statements made for purposes of medical diagnosis or treatment are excepted from the hearsay rule. Tex.R.Evid. 803(4). Puderbaugh argues C.P.'s statements to Brouwer, relating the abuse by Puderbaugh, are inadmissible under *Gohr-*

*ing v. State,* 967 S.W.2d 459 (Tex.App.— Beaumont 1998, no pet.). Recognizing that the medical treatment exception to the hearsay rule is based on the assumption that the patient appreciates that the effectiveness of the treatment may depend upon the accuracy of the information provided, we held that statements made to a CPS investigator were not admissible under Rule 803(4), absent a showing of a medical care component to the worker's employment of which the declarant was aware. *Id.* at 461–64. Brouwer acknowledged that in the course of treatment in counseling C.P., it had been conveyed to C.P. that the reason for seeing him was to help her with her emotional problems. Brouwer and C.P. discussed the importance of telling the truth to him, and C.P. understood the difference between telling the truth and telling a lie. Thus, the State established both the medical care component of Brouwer's sessions with C.P. and C.P.'s awareness of the purpose of the treatment. The trial court did not err in admitting the evidence under Rule 803(4). Point of error one is overruled.

Point of error two urges, "The trial court erred by allowing a social worker to testify to statements made to him which incriminated appellant because the State did not show that the social worker qualified as an expert." Puderbaugh argues that Brouwer's testimony regarding statements made by C.P. during the course of play therapy was inadmissible because the reliability of his methodology was not shown to have been tested in this case. Puderbaugh complains that Brouwer's method of diagnosis was not based on any standardized testing procedure, but on his training and experience.

▮ For scientific evidence to be considered reliable, the underlying theory must be valid, the technique applying the theory must be valid, and the technique must be properly applied on the occasion in question. *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App.1992). Factors re-

lating to reliability include but are not limited to: (1) acceptance by the relevant scientific community; (2) qualifications of the expert; (3) literature concerning the technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying theory or technique can be explained to the court; and (7) the experience and skill of the person applying the technique. *Id.* Depending upon the context, these specific factors may or may not apply to "soft science." *Nenno v. State,* 970 S.W.2d 549, 560 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas,* 4 S.W.3d 720 (Tex.Crim.App.1999).

When addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, *Kelly's* requirement of reliability applies but with less rigor than to the hard sciences. To speak of the validity of a "theory" or "technique" in these fields may be roughly accurate but somewhat misleading. The appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science. And, hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences.

*Nenno,* 970 S.W.2d at 561.

This case is unusual because Brouwer did *not* offer an expert opinion as to whether C.P.'s behavior is consistent with child victims of sexual abuse. The issue is not whether Brouwer possesses sufficient expertise so that his opinion will aid the jury in its understanding of the evidence, but whether the methods employed in C.P.'s treatment are sufficiently reliable to permit Brouwer to relate to the jury statements made by C.P. during "play therapy." Brouwer testified that he acquired a bachelor's degree in psychology and a master of social work degree from Western Michigan University. He has been employed by St. Mary's Hospital since 1981, working in a family health center that trains family physicians. He has puppets and stuffed animals in the room, which he uses in conversations with younger children like C.P. He asks the child to draw self-portraits and pictures of her family to be used as tools in their discussions. He has discussed this case, and others, with a psychiatrist and two other social workers who teach family practice residents with him. The methods he uses in his treatment of C.P. are recognized methods in the field of social work. Puderbaugh did not produce any evidence challenging the legitimacy of the field of social work, nor did he rebut Brouwer's expertise in the field or offer any publications questioning the legitimacy of play therapy. *See Campos v. State,* 977 S.W.2d 458, 463–64 (Tex.App.—Waco 1998, no pet.). Brouwer's field of expertise, social work, appears to be legitimate, his work with C.P. was within his field, and he relied upon recognized methods in the field of clinical social work. We find the reliability of Brouwer's testimony to be sufficiently established to permit him to testify regarding statements made by C.P. in the course of medical treatment. Point of error two is overruled.

The appellant's brief combines his argument for the next two points of error:

Point of error three: The trial court erred by prohibiting the jury from hearing that the complainant had made other accusations of abuse because these statements reflected on her credibility.

Point of error four: The trial court erred by keeping defense counsel from

asking the complainant if she had ever had to testify in another criminal case.

■ The credibility of a witness may not be attacked with specific instances of conduct other than conviction of crime. TEX.R.EVID. 608(b). While our state does not recognize a *per se* exception for sexual offenses, the Confrontation Clause may occasionally require the admission of evidence that the Rules of Evidence would exclude. *Lopez v. State,* 18 S.W.3d 220, 225 (Tex.Crim.App.2000).

In his bill of exceptions, defense counsel asked C.P. if she recalled telling someone that her baby sitter's son had done something she didn't like, if she ever made such a statement, or if she ever made a statement about some black boys doing something to her, or if she recalled making a statement about "Chris" doing something to her. C.P. did not recall making such statements, nor did she recall making any statements about anyone other than her father. The appellant's brief does not direct us to any evidence that C.P. ever made an accusation of penile penetration against someone other than her father, nor does he identify any evidence in the record to support a claim that such an allegation, if made, was false. As was the case in *Lopez,* there is no evidence that C.P. made a prior accusation that was false or that was similar to the accusation against Puderbaugh. Points of error three and four are overruled.

The final point of error contends, "The trial court erred by not declaring a mistrial when the complainant admitted she had been told that she could avoid answering questions by simply saying she didn't remember." The complainant was six years old at the time of the offense and nine years old on the day of trial. Outside the presence of the jury, defense counsel asked C.P., "[H]as anyone ever told you that you could say I don't remember when you really don't want to answer, when it is a hard question?" C.P. replied yes, her mother had told her that. On cross-examination, C.P. stated that there were parts of the questions defense counsel asked that she did not understand. In denying the motion for mistrial, the trial judge mentioned that the complainant was crying and might have misinterpreted the question, and suggested he could question the mother or bring the child back in front of the jury.

■ The implication here is that C.P. may have testified falsely in front of the jury any time her response to a question was that she did not remember. The knowing use of perjured testimony by a prosecutor in obtaining a conviction violates a defendant's due process rights and denies the accused a fair trial. *Davis v. State,* 831 S.W.2d 426, 439 (Tex.App.—Austin 1992, pet. ref'd). In cases involving misconduct by law enforcement or government personnel, knowledge of perjured testimony may be imputed to a prosecutor who lacks actual knowledge of the falsity. *Ex parte Castellano,* 863 S.W.2d 476, 480 (Tex.Crim.App.1993). Assuming that the victim's mother's conduct could be somehow imputed to the State, Puderbaugh has not established that the complainant committed perjury by testifying that she did not recall a material fact when in truth she did remember. We hold the trial court did not abuse its discretion in denying the appellant's motion for a mistrial. Point of error five is overruled. We affirm the judgment.

AFFIRMED.